With the lawyers who are going to argue, please come forward and tell us your names. I'm Elizabeth Cook for the appellant, Claude Crowder. Good afternoon, Adam Simarco, Assistant State's Attorney, representing the people of the state of Illinois. Good afternoon. A couple of things. One is you each have up to 20 minutes. You do not need to take the whole 20 minutes, but I would like to ask the appellant if you'd like to reserve some of your 20 minutes for rebuttal. Yes, I'd like to reserve five minutes. Okay. And second of all, that microphone is not for amplification. It's just to record, so make sure you keep your voices up. The clerk will likely stand when your time is up. If you notice her standing, please wind up and have a seat. Thank you. You may proceed. Oh, I'm sorry. This does not come out of her time. There is a motion to file to cite official authority. Does the state have any objection? If there's any response of anything you want to get to our attention, please do it. Do you want to respond early or do you just want to respond in writing? I'd like to reserve the opportunity to respond in writing. Okay. If you do want to get us anything, get it to us within the next seven days. Okay. Good afternoon, Your Honors. May it please the Court, Counsel? In this case, the state did not disprove the defense of self and another beyond a reasonable doubt. The analysis in this case is necessarily fact-specific. The evidence showed that Claude approached his own house for a lawful purpose, to bring his child and clothes to a funeral. Both Claude and his 73-year-old father, Sammy, testified that Claude was living with his wife, Perlina, at the house at the time of these events. Claude knocked repeatedly at the door and received no answer. Then Sammy approached the porch to tell him to forget about it. The door opened and three men were standing in the doorway, Rara and Perlina's two brothers, Lewis Woods and Andrew Jackson. Sammy testified for the state that the man on the left, identified by Claude as Lewis, aimed a punch at Claude, but instead hit Sammy in his shoulder and knocked him off the porch onto rocks five feet below. Sammy did not see if Claude was hit. Claude testified that Lewis first hit Claude in the jaw, then hit Sammy in the shoulder and knocked him off the porch. Thus, the undisputed evidence supports the first element of self-defense, that Claude was not the aggressor. Claude left the porch to check on his father, Sammy, lying motionless on the ground with his head under the porch. Claude and Sammy both testified that they heard foul language, expletives and threats coming from the three men on the porch. Sammy testified, quote, the first comment was from the porch. You could hear, I will empty the caps in his ass. Sammy testified he repeatedly heard, quote, we need to cap his ass. Claude testified he saw Rara reach for a bulge in his waistband, which he believed to be a gun. Claude had previously seen Rara with a gun and he testified, I knew it was a weapon. Thus, this undisputed evidence supports the second and third elements of self-defense. Claude and Sammy were threatened with unlawful force and the danger of harm was imminent as Rara threatened to shoot Claude and appeared to be reaching for a gun. Claude testified that for protection for me and my father, he pulled his father's gun out of its holster. Sammy is a Vietnam veteran with a Floyd card and a concealed carry license. Claude testified, quote, I didn't get my father's gun until I noticed Rara reach for the bulge in his pants. Claude fired a single shot into the air. Again, this undisputed evidence supports the fourth element of self-defense, which is that the use of force, such as it was, was necessary. But I'm just a little bit confused. The trial court found him not guilty of shooting the gun in the air and all of this that took place on the site and it was his house, right? Yes, Your Honor. But the arrest was, I don't remember if I'm getting this, but a block away. You're right, yes. A block away. You're right. And the elements, for example, nobody was the aggressor a block away. Right. And what was the imminent danger of harm a block away, which is where this sort of offense took place, right? Yes, yes, you're right, Your Honor. First, the court found him not guilty of reckless discharge because the court found he did not endanger the bodily safety of any individuals. Second, I think in order to understand why the harm continued, we need to continue through the facts, which illustrates that the harm, in fact, did not end when he left the property but continued past that point. In addition, the entire course of these events only lasted one to two minutes. His arrest occurred about, he said, Claude testified one to two minutes after he left the property. So the sixth element of self-defense, which is that his beliefs were objectively reasonable, is illustrated by what happened after the warning shot. Claude and Sammy both testified that the foul language and the threats increased from the men on the porch and became more specific as to what they were going to do to Claude after he fired the warning shot. Claude testified that he heard Perlina ask what had happened and Rahrah said, quote, don't worry about it, we fit in a bust, a cap in his ass. Thus, this uncontradicted evidence is that the men were planning to kill Claude. Claude's subsequent actions demonstrate his attempt to diffuse the situation and to minimize the harm to his father, Sammy. Claude began backing up. Claude testified that he looked at the porch and he saw the men coming off the porch. Then he turned and ran away. He testified the reason he ran was to deflect the men from his father. He testified, if there was going to be any more altercation, I'd rather it be between me and them, not my father. I never intended for my father to get hurt. He was stopped by a police officer, as Your Honor noted, a mere two blocks from the house, about one to two minutes after this event occurred. He explained to the officer that he was pissed off because the men on the porch had hurt Sammy, and he testified that I really felt they really did do some harm to him. Where, just to ask, repeat Justice Griffin's question, where is the imminent danger to him? Where is the imminent risk of harm to him at that point? Your Honor, the evidence in the case does not illustrate that the harm ever decreased. Again, this whole course of events happened within about one or two minutes. He intended for the men to follow him and away from his father, and, in fact, he saw them coming off of the porch. And, again, he was arrested just one or two minutes later as he ran. Why would he get rid of a couple of the bullets then? Your Honor, the evidence on this point is ambiguous. He was not cross-examined about that. We simply don't know from the record what he was thinking. However, it is well established that in a case of self-defense, perfect judgment is not expected. Our Supreme Court said in 1933, the law does not charge an individual to use infallible judgment. It would be unreasonable to require such an exercise of careful judgment in the space of a few seconds while one is under great stress and excitement. But couldn't a judge infer that he didn't feel he was in the, even the fifth one actually and subjectively believed the danger existed if he was unloading the gun? Well, Your Honor, in this situation, given the very brief time span, he simply had no good option regarding what to do with the gun. He could not drop it on his property as he fled because one of the men on the porch was likely to pick it up. He could not simply drop it on the street either where it could be picked up by a child or by a neighborhood gang member. He simply had no better choice. In addition, self-defense imposes no duty to retreat. But in this case, Claude did retreat. All of Claude's actions are consistent with the de-escalation of harm and not an escalation of harm. The case cited by the State in its brief, People v. Deoca, is readily distinguishable. In that case, the court made a factual finding that the defendant was the aggressor because he showed up at the conclusion of a fistfight and transformed the event into a different encounter by displaying a loaded shotgun and shouting at the crowd. The court specifically found the defendant was not credible and disbelieved his testimony that he simply found the gun lying under a tree. In this case, there was no evidence that the fight was over at the time that Claude armed himself as the men were continuing to yell threats and appeared to be reaching for a gun. In addition, the court never made an adverse credibility finding against Claude. His testimony is largely consistent with that of Sammy. In addition, the defendant in Deoca was never the specific target of any threats while the fistfight was going on. In this case, the men on the porch were specifically threatening to shoot Claude. Your Honor, it appears that whether the offense of AUW can be subject to an affirmative defense is apparently an issue of first impression in Illinois. The State has cited no cases in its brief saying that this affirmative defense cannot be raised in an AUW case. The case of Harmon v. State from Indiana is persuasive authority on this point. In that case, the court held that the defendant could claim self-defense against a charge of unlawful possession of a firearm by a serious violent felon. Harmon's status as a serious violent offender was merely one element of that offense and the State was still required to prove that he possessed the firearm in question. Harmon involved a fistfight with multiple people which escalated when one of the participants, John, grabbed a gun. Harmon saw this and got his fiancee's gun and fired it into the air when he saw John coming at his fiancee with his gun. Court in that case concluded that Indiana's prohibition against a felon possessing a firearm was not intended to affect his right to use a firearm in self-defense but was intended only to prohibit felons from having weapons in circumstances other than those in which the right to use deadly force in self-defense appears or reasonably appears to exist. The nature of self-defense is that it provides an exception to the norms of lawful activity. A battery or even a murder is unacceptable and unlawful except when necessary to defend against the imminent use of unlawful force. Similarly, the unlawful use of a weapon is excused when it becomes necessary to arm oneself to defend against imminent harm. Are you familiar with the Dollins case? We have recognized the defense of necessity in this exact kind of circumstances where someone without a license has a gun, possession of a gun briefly for an important necessary reason. Do you think that would apply here as well? I would need to review the case, Your Honor, but it certainly seems like that would be on point. If there are no further questions, we ask this Court to reverse Claude's conviction for AUW because his actions in defending himself and his father were reasonable and justified. Thank you. Good afternoon again, Your Honors. May it please the Court, Counsel. The evidence in this case clearly established that the defendant was not guilty of, or that, pardon me, was guilty. The evidence in this case clearly established that the defendant was guilty of aggravated unlawful use of a weapon. The defendant had a Glock .38 caliber loaded with two bullets in his right pants pocket. The defendant admitted that he took his father's gun from his father's holster and later walked down the street with that gun before he was stopped by police. At trial, the parties stipulated that Sammy Crowder told the police that the defendant took his gun from his waistband. What should he have done in this factual circumstance? Your Honor, I understand that the facts here are sympathetic and that Mr. Crowder was in kind of a sticky situation. However, the defendant was convicted of aggravated unlawful use of a weapon, and that is the defense that we have on appeal here. And the State and the evidence showed and satisfied each and every element of that offense. Can you answer Justice Griffin's question? Can you, now with three years to have thought about it, have a better solution to what he should have done? Your Honor, I'm not exactly positive on what he should have done, but the facts show that he carried a loaded, uncased weapon down the street a block away from the scene. So is the State's position that there is no set of circumstances where someone can possess a weapon, innocently possess a weapon, or two minutes and not be charged with a gun offense? Well, in the event that they don't have the proper license, they're sure. But I think the proper situation that would apply to these facts is the defense of necessity, which was not raised at trial and which was not raised in the opponent's brief. But they're really two sides of the same coin, really, right? I mean, they both are justifications for holding a gun. Sure. Yes, Your Honor. They're both justifications, but they are slightly different, and the defense of necessity was not raised. So we are here under the defense of self-defense. And while he was on his property, that was not a violation, is that correct? While he was on his own property, no. That was not a violation. So possessing it there was okay. When he crossed the sidewalk, probably that's when he became guilty of this crime. Yes, Your Honor, when he left his own property and entered the public way. The other option would have been to stay there with these three gentlemen or leave the gun. Those were his other options so that he would not violate this crime. Correct. Yes, those are two possible options the defendant could have taken, and that may have been a viable option had the defense of necessity been raised, however, it was never raised. What public policy is advanced by a prosecution under these circumstances and a conviction under these circumstances? Generally speaking, there's a great public interest in reducing the amount of gun violence and having guns available and open on the street. No, under these circumstances. In other words, if somebody's walking down the street and they find a weapon on the street, pick it up and walk down the street, according to this prosecution, a UUW offense lies. Is that consistent with the public policy of this state with respect to weapons offenses? I'm not necessarily the author of public policy, but that being said, I think it is consistent in that the evidence shows that the defendant was guilty, he possessed the gun. No, we know the evidence shows he was guilty, but does that serve the public purpose and the purpose of these statutes to prosecute somebody under these facts or the facts I suggested about finding a weapon for a short period of time possessing it? Is the public policy of the state enhanced by that type of prosecution? I believe that it is, Your Honor. In what way? In that there's a great public interest and a public policy in reducing the amount of guns and in reducing gun violence, and if you allow someone to openly carry a weapon without the proper licenses, even just for a brief amount of time, it's still a danger to the public. What element of self-defense do you say you negated? Your Honor, I believe the evidence negated the first, second, and fourth elements of self-defense in that there was no unlawful force threatened against the defendant when he was well away from the porch, the fight on the porch, when he was walking down Lyaflin. Well, counsel's position is that it was continuing, and had he not taken the gun, it would have been... More dangerous. More dangerous. Right. More danger would have occurred had he brought the gun in. Right. And again, I think that goes back to the defense of necessity rather than self-defense. And it also, I think, supports self-defense, does it not? How do you negate self-defense? I'm sorry, you say the first... Second and fourth elements. Unlawful force was threatened. There were threats against him. That was clear. Right? The brothers threatened him. They threatened him at the porch, yes. Right. He was not the aggressor. So you're saying, so those, the use of force was necessary, and the use of force, the taking the gun was necessary to prevent further danger, right? It may have been necessary in the legal defense of necessity, yes. No, but I'm looking at the elements of self-defense. Well, sure. Turn it to the porch. Defendant, we contended, the state contends that the defendant actually was the aggressor when he pulled the gun. He escalated the encounter and became the aggressor, which, that goes back to the people versus the ochre case. There was a similar fact in that case where there was a fistfight. The defendant escalated the fight to a different encounter when he pointed a loaded shotgun and yelled at people gathered on the street. But there's no pointing here. It was up in the air. The court specifically found it was not reckless. It was done to de-escalate the situation. Well, in addition, he left the scene. That's where he committed the crime, was leaving the scene. So I'm not sure how he would be the aggressor. Well, the elements that are negated are different at the porch and on the street. There's a crime at the porch. We agree on that. He's on his own property. There's no crime, right? He's on his own property, but he was found not guilty of the reckless discharge. So there was a crime at the porch when he shot the gun, but he was found not guilty of the reckless discharge. So that's not unlawful for him to possess it in his own property, correct? Correct. Okay, so there's no crime when he's at the porch. When he leaves, that's the crime of unlawful possession, correct? Correct, Your Honor. Okay. So now, Justice Griffin's question was? What was your question? Well, I think you said that he was not the aggressor in order to have the second element. Is that one you said that wasn't proven here? No. Did you say one, three, and four? Away from the porch, the evidence negates the first, second, and fourth elements. So the first element, at the time he possessed the gun on YF1, he was a while away from the fight on the porch, and there was no longer any threat of unlawful force against him or anyone else. How do we know that? Yeah, what if they followed him and the guy had a gun? There was no evidence in the record to show that the individuals from the porch followed him further than stepping off the porch. There was no evidence that they had chased him down the street. There was no evidence that he was actively fleeing from people chasing him. It was his thought that they may have been chasing him. It was his intent to draw them off the porch, but there was nothing in the record to show that he was still in eminent harm. Is that an unreasonable thought? I believe it is unreasonable in the fact that he could have, you know, turned around and seen the individuals chasing him. He could have seen them. And then dropped the gun so that perhaps they start chasing him and pick up the gun? I mean, this happened in a very compressed period of time. The crime was committed, let's say, when he stepped into the street. Would you even know at that point whether they were following him? Well, he still would have thought, I don't know how many feet it was from the porch to the street, but you know what I mean? Yeah, but from the porch to the street is one thing, but from the porch to another street down the block, he would have been able to discern if people were chasing him and if he was in any imminent danger at that point, and there was no evidence to show that he was away from the porch. When did the imminent danger end? When the individuals from the porch did not, in fact, chase him. You agree it all happened within a couple of minutes? Yes, Your Honor, of course, yes. Is it possible that they didn't chase him because they knew he had a gun? Yes, Your Honor, it's possible, it's possible. In defense of themselves so that no further harm to him would occur? Well, again, I think that gets back to necessity rather than self-defense. And then I guess back to the fourth element, there was no danger at 7055 South Laughlin, the scene of the arrest, and therefore without any danger there was absolutely no reason for the defendant to arm himself. And then I guess just briefly, the assertion of self-defense or defense of another does not negate any of the elements of the crime here. The defendant was convicted of possessing a loaded, uncased handgun without the appropriate license. This is a licensing issue, and the assertion of self-defense does not apply to the defendant's failure to possess the appropriate license to carry a gun on his person. And just briefly, I'll address. We've never said that. The Illinois courts have never said that specifically, right? Indiana courts have said it does, and the Illinois courts have never said it doesn't. Correct. And to that point, Your Honor, I'd like to just briefly address the Harmon v. State case. The Indiana courts have interpreted their self-defense statute as applying to any act that might be deemed criminal. We don't necessarily have that same construction here in Illinois. And the appellant hasn't met their burden, showing that we do. Furthermore, the facts in Harmon are distinguishable from the facts here. The defendant in Harmon testified that he actually saw someone pull a gun at the fight, where here there's no evidence that the defendant saw any of the gentlemen on the porch actually pull a gun. He thought there may have been a gun, although he never actually saw a gun. It's an interesting argument because 99 times out of 100, we have search and seizure cases where the state argues that a police officer seeing a bulge in a defendant's waistband, pocket, jacket, shirt, was sufficient to have a suspicion that the person may be armed with a weapon. You know, I mean, we're talking about a civilian looking at another civilian who thinks he sees a bulge and believes it to be a weapon. You know, is that not okay? I am unaware of really the case law on that issue, so I can't comment on it. Well, it just seems someone's inconsistent. I think it's someone who's inconsistent. You may not. Out of curiosity, what is your position on necessity? In what regard? This case. I think necessity could have possibly been a more viable defense than self-defense had it been raised. But it hasn't been raised either at trial or on appeal, and therefore it's been waived. Is it that different than self-defense, or are they contained within each other? I think they're a little bit different. The elements of necessity are, number one, that the person claiming the defense was without blame and occasion of developing the situation, and number two, that this person reasonably believed his conduct was necessary to avoid a greater public or private injury than that which might reasonably have resulted from his conduct. So it's a little bit different from self-defense and probably more viable than self-defense. However, in this case, it was not raised. Those two would be similar to two of the elements of self-defense, right? Similar, correct. I mean, self-defense is a kind of necessity, correct? It's a specific kind of necessity. It says, I need to do this in this particular instance. I need to use force. It's a necessity. It's a kind of necessity, isn't it? Sure, Your Honor. It might be a kind of necessity. However, necessity is an affirmative defense, which is, it's necessary for the affirmative defense of necessity to be raised below. In this case, it was not. Could the trial court have found that sui sponte after listening to all the evidence? In other words, if the defendant said, I got a self-defense case here, and the judge heard this testimony, could the trial court be within its rights to say, eh, it's more necessity, not guilty? No. The proper time to raise affirmative defense is in the defendant's answer. And in this case, the defendant answered that they were pursuing a self-defense theory. That was, of course, before the court had acquitted the defendant of reckless discharge. Correct. So things arguably changed at that point, arguably. Well, let's keep in mind that the trial court didn't find that the defense of self-defense was the reason he was trying not guilty on the reckless discharge. No, I understand. But his use of firepower, had he been acquitted on any use of firepower, any actual implementation of force? Correct. But the judge below said she found that the defendant was not guilty because it was not shot in a reckless manner. It was shot in an intentional manner in the air and not shot in the direction of anyone. So below, the trial court did not find that the defendant was acting in self-defense. She found that he was acting intentionally. Right. And not reckless. Or bad, like an assassin. Maybe. But she also found that it was not self-defense. Yeah. And for those reasons. Thank you. And if there are no more questions, I'd just ask that this Court affirm the defendant's conviction. Thank you. Thank you, Your Honors. Very briefly, I don't believe the Court made a finding with respect to whether or not there was self-defense in this case. As counsel noted, the facts of this case are extremely sympathetic, given that he and his father were clearly threatened by these three men, who were not only, again, had a bulge visible in his waistband, which clawed him from prior experience, brought out to carry a gun. They were also uttering very explicit threats, explicitly saying, we're going to cap his ass, we're going to essentially shoot him to kill him. And as this whole encounter unfolded within the span of just a few minutes, Claude had very limited amount of time to decide what to do. No ability, really, to dispose of the gun once he grabbed it. And all of his actions are consistent with trying to mitigate harm, minimize harm, rather than escalate harm. Thank you, Your Honors. Thank you, guys. Interesting case. Thank you for an excellent briefing on both sides. We will take this under advisement. If you want to address anything, you'll get it to us by week from today. Right? Okay. All right. We're in recess.